# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IMMANUEL JOHNSON and ANIIRUDH RAMESH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TIMES INTERNET LIMITED,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Dated: March 28, 2024

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Max S. Roberts*
Victoria X. Zhou*
1330 Avenue of the America, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
  mroberts@bursor.com
  vzhou@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**PAGE**

NATURE OF THE ACTION ........................................................................1

FACTUAL BACKGROUND ........................................................................2

I.     HISTORY AND OVERVIEW OF THE VPPA .....................................2

II.    DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER ...............4

III.   DEFENDANT KNOWINGLY DISCLOSES CONSUMERS' PERSONALLY IDENTIFIABLE INFORMATION TO THIRD PARTIES ........................................................................6

    A.    Testing Reveals That Defendant Illegally Shares Users' PII With A Third Party Through Its App .........................6

        1.    Overview Of The Clevertap SDK .................................8

        2.    Defendant Discloses App Users' E-Mail Addresses, User IDs, And Session IDs To CleverTap .................................................................9

        3.    Defendant Discloses Information Identifying Which Specific Videos Were Watched By Which Users To CleverTap .............................11

    B.    Defendant Discloses Personally Identifiable Information To CleverTap For The Purposes Of Marketing, Advertising, And Analytics ...................16

    C.    Defendant Knowingly Discloses Users' PII To CleverTap ........................................................................20

IV.   EXPERIENCES OF PLAINTIFFS ........................................21

    A.    Experience Of Plaintiff Immanuel Johnson ..............................21

    B.    Experience Of Plaintiff Aniirudh Ramesh ................................23

PARTIES........................................................................24

JURISDICTION AND VENUE ........................................................24

i

CLASS ALLEGATIONS ........................................................................................25

CAUSES OF ACTION .........................................................................................28

PRAYER FOR RELIEF ........................................................................................31

JURY DEMAND ..................................................................................................31

Plaintiffs Immanuel Johnson and Aniirudh Ramesh ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action suit brought against Defendant Times Internet Limited ("Times Internet" or "Defendant") for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

2.     The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

3.     The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710.

1

4.      Defendant produces a wide variety of pre-recorded videos that are watched by millions, if not billions, of consumers nationwide.  These platforms are accessible on mobile via the Cricbuzz Android and Apple mobile applications.

5.      Unbeknownst to Plaintiffs and Class Members, however, Defendant knowingly and intentionally discloses its mobile application users' personally identifiable information—including a record of every video viewed by a user—to unrelated third parties.  By doing so, Defendant is violating the VPPA.

6.      Plaintiffs bring this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

## FACTUAL BACKGROUND

### I.    HISTORY AND OVERVIEW OF THE VPPA

8.      The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record.  Congress responded by passing the VPPA, with an eye toward the digital future.  As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Pratik Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what

they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone.  I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

9.    In 2012, Congress amended the VPPA, and in doing so, reiterated the Act's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones."  S. Rep. 112-258, at 2.

10.    The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710(b)(1).  The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider."  18 U.S.C. § 2710(a)(3).  A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

## II.    DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER

8.    Defendant Times Internet owns a majority of Cricbuzz's shares.[1] Cricbuzz refers to itself as a "property of Times Internet Limited,"[2] or simply as "Times Internet Ltd."[3]  Defendant controls the operations of Cricbuzz, and Times Internet even merged its own previous cricket website, gocricket.com, with that of Cricbuzz.[4]

9.    Cricbuzz is "the most popular destination for Cricket in India, provid[ing] all round coverage of international, domestic and T20 leagues from around the world."[5]  In addition to written articles, Defendant Cricbuzz offers live and pre-recorded video content.  Cricbuzz's prerecorded video content includes premium content and highlights from matches.[6]

---

[1] *Times Internet acquires Cricbuzz*, CRICBUZZ (Nov. 10, 2014, at 4:18am), https://www.cricbuzz.com/cricket-news/66587/times-internet-acquires-cricbuzz.

[2] CRICBUZZ, https://www.cricbuzz.com/product-blog/cricbuzz-mobile-apps-tv-ad-cricket-ka-keeda (last accessed Mar. 15, 2024) (describing Defendant's website, Android mobile application, and iOS application).

[3] *See* Privacy Policy, CRICBUZZ, https://www.cricbuzz.com/info/privacy (last accessed Mar. 27, 2024) (Cricbuzz's Privacy Policy was last updated on March 21, 2024).

[4] *See id.*

[5] Careers, CRICBUZZ, https://www.cricbuzz.com/careers/93/sales-manager (last accessed Mar. 15, 2024).

[6] Premium Videos, CRICBUZZ, https://www.cricbuzz.com/live-cricket-scores/89675/gt-vs-mi (last accessed Mar. 27, 2024).

10.     Times Internet operates a website, an Android mobile application, and an iOS mobile application under the Cricbuzz name.  Relevant to this lawsuit, Defendant delivers prerecorded videos through its Cricbuzz Android and iOS mobile applications (collectively, the "Cricbuzz App" or "App") to Cricbuzz account users. "Cricbuzz's mobile applications for Android and iOS are the no. 1 cricket apps on the respective app stores."[7]

11.     Cricbuzz's accounts are offered in free or paid form.  Regardless of whether a user signs up for a free or a paid account, all individuals must provide their email address during the sign-up process.

12.     Creating a Cricbuzz Plus (paid) account provides users with benefits that free account holders do not receive.  Cricbuzz Plus account holders receive "No Intrusive Ads, Premium Editorials & Cricbuzz Orignals [video content.]"[8]  Cricbuzz Plus's paying account holders receive exclusive access to pre-recorded video content including, but not limited to, premium "Cricbuzz Originals" videos and an "exclusive lineup of shows."[9]

---

[7]  Careers, CRICBUZZ, https://www.cricbuzz.com/careers/93/sales-manager  (last accessed Mar. 15, 2024).

[8]  Cricbuzz,  https://cricbuzz.com/premium-subscription/user/manage-subscription (last accessed Mar. 18, 2024).

[9]  Cricbuzz,  https://www.cricbuzz.com/premium-subscription/user/select-plan/ cricbuzz-promo (last accessed Mar. 18, 2024).

13.    As of March 2024, Cricbuzz Plus was offered to individuals in the United States at $19 USD per year.[10]

## III.    DEFENDANT KNOWINGLY DISCLOSES CONSUMERS' PERSONALLY IDENTIFIABLE INFORMATION TO THIRD PARTIES

### A.    Testing Reveals That Defendant Illegally Shares Users' PII With A Third Party Through Its App

14.    In preparing for this action, Plaintiffs' counsel commissioned a private research company to review and conduct a dynamic analysis on the App.  A "dynamic analysis" records the transmissions that occur from a user's device.

15.    The private researchers tested what information (if any) Defendant discloses when a user watches a pre-recorded video on the Cricbuzz App.  The analysis revealed that Defendant discloses to third parties information sufficient to identify specific users and the exact videos they watch.

16.    The analysis first established that Defendant incorporates multiple "application programming interfaces" ("APIs") into the Cricbuzz App, either directly or contained inside a software development kit ("SDK").

---

[10]    Premium subscription, CRICBUZZ, https://www.cricbuzz.com/premium-subscription/user/select-plan/cricbuzz-promo (last accessed Mar. 12, 2024).

17.    APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their companies."[11]

18.    Defendant integrates at least one company's SDK into the App: the CleverTap SDK.  As alleged in greater detail below, Defendant discloses to CleverTap via the CleverTap SDK an App user's: (i) e-mail address (ii); user ID; (iii) session ID; (iv) the name of the pre-recorded video watched by the user; and (v) the video ID of the pre-recorded video watched by the user, in addition to other information.

| THIRD PARTY | VIDEO INFO | PERSONAL INFO | OTHER INFO |
|---|---|---|---|
| CleverTap | Video ID, Video Name, Video interactions | Email, Username* | User ID, IFV (iOS), Neighborhood**, Session ID |
| * The username consists of the first part of the email address but can be changed manually. If it is updated, CleverTap is informed about the change. | | | |
| ** An approximate location (neighborhood) is shared. In our tests, the shared location was about 4-5 miles from the actual location. | | | |

19.    Defendant may have disclosed users' personally identifying information, such as email addresses, location, and the exact videos users watched to other third parties as well.

---

[11] Application Programming Interface (API), IBM, https://www.ibm.com/cloud/learn/api (last accessed Mar. 27, 2024).

### 1. Overview Of The Clevertap SDK

20.    CleverTap brands itself as an "All-In-One engagement platform."[12] CleverTap develops, owns, and operates the API of the same name.

21.    Once integrated into a mobile application, the CleverTap API allows an app developer to, among other features, "[h]arness big-data to drive targeted customer engagement through automated segments, advanced analytics and actionable intelligence," and "[t]ailor customer interactions based on demographics, prior behavioral patterns, real-time actions and recommend next best experiences."[13]

22.    CleverTap's technology gives clients the capabilities they need to "[i]ngest, analyze and segment customer data" and engages users through various channels.

23.    As part of CleverTap's suite of data capabilities, a client can "[h]arness granular data over an extended" period "with [the] TesseractDB" function before using CleverTap's rich data analytics kit to measure campaign impact.[14]  This, in turn, allows customers like Defendant to "[u]tilize analytics tools … [to] [g]ain

---

[12] CLEVERTAP, https://clevertap.com/ (last accessed Mar. 27, 2024).

[13] CRAFTING CUSTOMER LIFETIME EXPERIENCES, CLEVERTAP, https://clevertap.com/product-overview/ (last accessed Mar. 27, 2024).

[14] Customer Data Analytics, CLEVERTAP, https://clevertap.com/customer-data-and-analytics/ (last accessed Mar. 27, 2024).

insights into user behavior and measure campaign impact for informed decision making."[15]

24.    In addition to data tracking, analytics, and personalized marketing and advertising services, CleverTap also offers its clients user engagement services in various channels, such as Whatsapp, SMS, and in-app messaging.[16]  These channel-based services seek to retain users through personalized content offerings.

25.    As alleged in greater detail below, Defendant utilizes each and every one of these features and sends App users' PII to CleverTap through the CleverTap API to assist with Defendant's marketing, data analytics, and revenue generation.

     2.    *Defendant Discloses App Users' E-Mail Addresses, User IDs, And Session IDs To CleverTap*

26.    The dynamic analysis demonstrated that Defendant was sharing App users' e-mail addresses to CleverTap via its APIs.

27.    An email address is a unique string of characters which designate an electronic mailbox.

---

[15] *Id.*

[16] CLEVERTAP, https://clevertap.com/ (last accessed Mar. 27, 2024).

28.     As industry leaders,[17] trade groups,[18] and courts[19] agree, an ordinary person can use an email address to uniquely identify another individual.  Indeed, there exists multiple services that enable anyone with internet access and a credit card to look up who owns a particular email address.

29.     A user ID is a unique string of numbers which Defendant assigns to an individual user after a user creates a Cricbuzz account.  The unique user IDs allow Defendant and third parties like Clevertap to identify and track an individual user.

30.     A session ID is a unique string of numbers that Defendant assigns to an individual user for the duration of the current session.[20]

---

[17] Allison Schiff, *Can Email Be The Next Big Online Identifier?*, AD EXCHANGER (Aug. 25, 2020), https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII, so as such it can never be a valid identifier for online advertising").

[18] Network Advertising Initiative, NAI Code Of Conduct 19 (2020), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (identifying email as PII).

[19] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

[20] *Session ID Definition*, Robert Sheldon, TECH TARGET, https://www.techtarget.com/searchsoftwarequality/definition/session-ID (last accessed Mar. 12, 2024); *see also* Analytics, GOOGLE, https://support.google.com/analytics/answer/9191807?hl=en (last accessed Mar. 12, 2024) ("In Analytics, a session initiates when a user either opens your app in the foreground or views a page or screen and no session is currently active, for example, their previous session has timed out.  By default, a session ends or times out after 30 minutes of user inactivity.").

31.    The following excerpt from the dynamic analysis shows Defendant disclosing a user's email address, user ID, and session ID to Clevertap.  The email address is highlighted in blue.  The user IDs (named both "User ID" and "Identity" in the below excerpt) and the session IDs (named "s" in the below excerpt) are highlighted in pink:



Android transmissions    iOS transmissions

*3.    Defendant Discloses Information Identifying Which Specific Videos Were Watched By Which Users To CleverTap*

32.    When  Defendant  transmits  a  user's  identifiers,  it  also  transmits information sufficient to identify which specific video was watched by that user. Specifically, as can be seen in the following excerpt of the dynamic analysis (highlighted in yellow), the App discloses to Clevertap (i) the title of the video watched by the user, (ii) the "video ID" for the video, and (iii) the "evtName" (*i.e.*,

the action the user took on the App, which in this case was watching the requested

video):

```
(packet) com.cricbuzz.android outbound to in1.clevertap-prod.com:443
(2600:9000:237b:ac00:8:d483:80c0:93a1) encrypted at time Tue Feb 27 19:51:59.780
2024 (1709063519780) uuid f2d4fcad-a6eb-4854-8b2a-98d74bf82440_s5
--------------------------------
[
  {
    "dsync": "false",
    "ep": 1709063517,
    "evtData": {
      "Country": "us",
      "Is Premium": "no",
      "Subscription Term Id": "-",
      "Tags Players": "rohit sharma",
      "Tags Series": "england tour of india, 2024",
      "Tags Teams": "",
      "Total Watch Time": "119",
      "User State": "na",
      "Video Category": "press conference",
      "Video ID": "79762",
      "Video Language": "hindi",
      "Video Title": "only those hungry to play test cricket will be given
opportunity: rohit sharma",
      "Video Type": "press conference",
      "is Live": "no"
    },
    "evtName": "Video Watched",
    "f": "true",
    "ls1": "0",
    "pg": "12",
    "s": "1709062952",
    "type": "event"
  }
]
```

33.     A video's full title is the most straightforward identifier of that video.

34.     A video ID can easily allow an ordinary person with access to the video

ID to discover the exact video a user watched.  All one has to do is to search the

video ID along with the word "Cricbuzz" in an online search engine.  For example,

the following screenshot demonstrates a Google search of a Cricbuzz video with the

video ID "79762."  The first result, "Only those hungry to play Test cricket will be

given opportunity: rohit sharma," is the video that the user watched in the above

dynamic analysis excerpt:



35.    While Defendant transmits a user's email address in a separate transmission from the user's video-viewing information, an ordinary person could still easily link the two transmissions and identify which user watched what videos.

36.    *First*, the two transmissions that Defendant discloses to Clevertap contain the same session ID—identified in the disclosures as "s."  In the following excerpt of the dynamic analysis, the user's session ID is "1709061867," and this remains constant in both transmissions.

```
(packet)  outbound to in1.clevertap-prod.com:443 () not encrypted at time Tue
Feb 27 2024 (1709061867.446672) uuid 0c43c63e-c723-4cac-9377-abe14afa13b6
---------------------------------
[
  {
    "dsync": "true",
    "ep": "1709061986",
    "evtData": {
      "Country": "us",
      "Is Live": "no",
      "Is Premium": "no",
      "Subscription Term Id": "0",
      "Tags Players": "harmanpreet kaur, renuka thakur singh, charlotte dean",
      "Tags Series": "england women tour of india, 2023",
      "Tags Teams": "india women, england women",
      "Total Watch Time": "7",
      "User State": "na",
      "Video Category": "news roundup",
      "Video ID": "76652",
      "Video Language": "english",
      "Video Title": "india women v england women; 2nd t20i: review ft. lisa
sthalekar",
      "Video Type": "analysis"
    },
    "evtName": "Video Watched",
    "f": "true",
    "lsl": "0",
    "n": "_bg",
    "pai": "com.sports.iCric",
    "pg": "1",
    "s": "1709061867",
    "type": "event"
  }
]


(packet)  outbound to in1.clevertap-prod.com:443 () not encrypted at time Tue
Feb 27 2024 (1709061867.446672) uuid 0c43c63e-c723-4cac-9377-abe14afa13b6
---------------------------------
[
  {
    "dsync": "true",
    "ep": "1709061929",
    "profile": {
      "AppVersion": "13.9",
      "City": "WESTROXBURY",
      "Country": "US",
      "Device Name": "iPhone 11",
      "Email": "bravibraveary@gmail.com",
      "Identity": "5a9b1259-ed74-4c91-b546-c921fb400023",
      "Name": "bravibraveary",
      "Network": "Wifi",
      "Phone": "-",
      "Platform": "iOS",
      "Sign Up Date": "$D_1709061928",
      "User Id": "5a9b1259-ed74-4c91-b546-c921fb400023",
      "User State": "NA",
      "cc": "US",
      "tz": "America\/New_York"
    },
    "s": "1709061867",
    "type": "profile"
  },
]
```

37.    *Second*, the two transmissions usually take place within seconds or minutes of each other.  For example, in above excerpt from the dynamic analysis of

an iOS App user, the timestamp ("ep") of the topmost transmission (containing information identifying the video viewed and the user's session ID) identifies the transmission as being sent at "1709061986," and the timestamp of the bottom transmission (containing the user's email address, user ID, and session ID) shows the transmission was sent at "1709061929."

38.     These timestamps are calculated in the widely-used "unix time" format, which is a representation of the number of non-leap seconds that have passed since "Unix Epoch" of 00:00:00 UTC on January 1, 1970.[21]  The internet offers many free tools that calculate unix timestamps.  For example, the following screenshot shows a free online tool's calculation of the unix timestamps, 1709061929 and 1709061986, into the human-readable dates and times of February 27, 2024 at 2:25:29 PM and February 27, 2024 at 2:26:26 PM respectively:[22]



---

[21] *What is the unix time stamp?*, https://www.unixtimestamp.com/ (last accessed Mar. 27, 2024).

[22] *Convert epoch to human-readable date and vice versa*, EPOCH CONVERTER, https://www.epochconverter.com/ (last accessed Mar. 27, 2024).

39.    Thus, the aforementioned transmissions took place within less than a minute of each other and involving the same session ID, allowing an ordinary person to easily link the two.

40.    To further identify the exact user watching any given Cricbuzz video, Defendant also discloses the user's country and city in the same transmission as the user's email address.  In the above excerpt from the dynamic analysis, the user accessed the video in West Roxbury, Massachusetts, USA.



**B.    Defendant Discloses Personally Identifiable Information To CleverTap For The Purposes Of Marketing, Advertising, And Analytics**

41.    Defendant transmits a user's name, e-mail address, user ID, session ID, video name, and video ID to CleverTap so that the CleverTap SDK can analyze users' behavior through their video-viewing information.  Using CleverTap's analysis results, Defendant is able to streamline how it targets different users with different marketing and advertising strategies, and thereby increase its user base.

42.    CleverTap allows Defendant to collect users' event and session data. Events are "what individual actions users perform in [the Cricbuzz A]pp."[23] Tracking events allows Defendant to "better understand what users are doing."[24]

43.    "A session is a period of continuous activity by the user."[25]  Among other things, "[a]nalyzing session length is a great way to measure [user] engagement."[26]  For example, the following screenshot depicts the most basic version of CleverTap's event tracker:[27]



---

[23] EVENTS, CLEVERTAP, https://docs.clevertap.com/docs/events (last accessed Mar. 27, 2024).

[24] *Id.*

[25] SESSION ANALYTICS, CLEVERTAP, https://docs.clevertap.com/docs/session-analytics (last accessed Mar. 27, 2024).  CleverTap "consider[s] a session timeout after 20 minutes of user inactivity."  *Id.*

[26] *Id.*

[27] EVENTS, CLEVERTAP, https://docs.clevertap.com/docs/events (last accessed Mar. 27, 2024).

44.    CleverTap's technology then allows Defendant to analyze the collected event and session data.

45.    "Analyzing events provides the capability to understand your audience's behavior on a comprehensive level."[28]    Among other capabilities, CleverTap's analytics technology allows customers such as Defendant to analyze collected user data by various properties and parameters:

- "**Quick View**," which analyzes data for Defendant to show "all the basic details such as the number of events, the number of profiles, demographics, and sample profiles."[29]

- "**Trends and Properties**," which analyzes data for Defendant to show "events and people on a daily, weekly, and monthly duration," as well as "evaluate [a] selected event by its property and also view the frequency histogram chart for the same event."[30]

- "**Geography**," which analyzes data for Defendant to show "event data" organized by "cities, regions, and countries."[31]

- "**Technographics**," which analyzes data for Defendant to show "event[s] based on the browsers, operating systems, and devices … including OS version, app version, make, and model."[32]

- "**People**," which analyzes data for Defendant to show "user profiles that performed the selected event, the percentage of

---

[28] ANALYZE EVENTS, CLEVERTAP, https://docs.clevertap.com/docs/events-analytics (last accessed Mar. 27, 2024).

[29] ANALYZE EVENTS, CLEVERTAP, https://docs.clevertap.com/docs/events-analytics (last accessed Mar. 27, 2024).

[30] *Id.*

[31] *Id.*

[32] *Id.*

demographics of users (women, men, others, unknown), and user properties."[33]

46.    CleverTap analyzes Session data by "track[ing] the events that users perform within a session."[34]  CleverTap also analyzes the real impact of a customer's campaigns, allowing a customer such as Defendant to "[v]isualize the boost in performance in … target segments;" "[e]stimate what percentage of users have churned in the target group;" and "[c]alculate the segment-wise impact of essential business metrics and know which segments have been performing better" comparatively.[35]

47.    Once Defendant analyzes users' raw data, it can then create and run targeted marketing and advertising campaigns.  Taking CleverTap's results from these campaigns, Defendant is able to create strategically personalized marketing and advertising campaigns that conform with analytics results from CleverTap's reports.

---

[33] *Id.*

[34] SESSION ANALYTICS, CLEVERTAP, https://docs.clevertap.com/docs/session-analytics (last accessed Mar. 27, 2024).

[35] REAL IMPACT, CLEVERTAP, https://docs.clevertap.com/docs/real-impact (last accessed Mar. 27, 2024).

### C.    Defendant Knowingly Discloses Users' PII To CleverTap

48.    Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses to CleverTap, through the CleverTap SDK, its users' personally identifiable information and video-viewing information.

49.    Defendant admits to using "third-party analytics tools" to "collect and process data" about users' who access and use Cricbuzz.[36]  Cricbuzz's Privacy Policy states that Defendant "may also use 'pixel tags,' 'web beacons,' 'clear GIFs,' or similar tracking technologies" to "track the actions of users" and "compile aggregate statistics about" Cricbuzz users.[37]

50.    Specifically, through the Cricbuzz Privacy Policy, Defendant admits to working with third party analytics entities to collect data from mobile devices using the Cricbuzz App through "mobile SDKs."[38]

51.    Moreover, common sense dictates that a sophisticated media entity such as Times Internet, who owns and operates a mobile application that at one point was hailed as the "[s]econd most downloaded app in the world"[39] and who includes

---

[36] Privacy Policy, Cricbuzz, https://www.cricbuzz.com/info/privacy (last accessed Mar. 27, 2024).

[37] *Id.*

[38] *Id.*

[39] *CricBuzz: Second Most Downloaded App In The World*, THE ECONOMIC TIMES (Jul. 19, 2019 at 7:57 AM IST), https://economictimes.indiatimes.com/tech/software/cricbuzz-second-most-downloaded-app-in-the-world/articleshow/70286 103.cms?from=mdr.

at least one data collection and analysis SDK into its App, is fully aware of the scope of the data that CleverTap and possibly other third parties are receiving and collecting.  Indeed, Defendant would need to contract with CleveTap specifically for CleverTap's data analysis and marketing/advertising services in order for the SDK to be implemented into the App.

52.    Therefore, Defendant knowingly and intentionally provides personal information and video-viewing information to CleverTap (and possibly other third parties) for data analytics, marketing, and advertising services.

## IV.    EXPERIENCES OF PLAINTIFFS

### A.    Experience Of Plaintiff Immanuel Johnson

103.    In or about March 2022, Plaintiff Immanuel Johnson created a paid Cricbuzz Plus account and downloaded the Cricbuzz App on his Apple iPhone. Plaintiff Johnson first started watching pre-recorded videos through his Cricbuzz Plus account on his Apple iPhone in March 2022, and has used the same account on the Cricbuzz App since March 2022.  Plaintiff Johnson most recently watched a pre-recorded video on the Cricbuzz App on or about March 2024.

104.    Between March 2022 and March 2024, Plaintiff Johnson used the mobile Cricbuzz App on his Apple iPhone to watch various videos from his Cricbuzz Plus account.

105.   By signing up for a Cricbuzz Plus (paid) account, Plaintiff Johnson gained access to and watched exclusive pre-recorded video content on the Cricbuzz App that non-paying Cricbuzz users cannot access.

106.   At all relevant times, Plaintiff Johnson never consented, agreed, nor otherwise permitted the App to disclose his PII to third parties.

107.   Likewise, Defendant never gave Plaintiff Johnson the opportunity to prevent the App from disclosing his PII to third parties.

108.   Nevertheless, each time Plaintiff Johnson viewed a video on the Cricbuzz App, Defendant disclosed his PII to CleverTap via the CleverTap SDK (and encoded API).   Specifically, Defendant disclosed to CleverTap Plaintiff Johnson's: (i) email address; (ii) Cricbuzz User ID; (iii) session ID; and (iv) video-viewing information in the form of the video ID and video name for each specific video watched by Plaintiff Johnson.

109.   Using this information, Defendant was able to identify Plaintiff Johnson and attribute his video viewing records to an individualized profile of Plaintiff Johnson in its databases.   Indeed, even an ordinary person could identify Plaintiff Johnson using the data Defendant disclosed to CleverTap.   CleverTap compiled Plaintiff Johnson's PII and Plaintiff Johnson's activity on the App, which Defendant uses for marketing, advertising, and analytics purposes.

**B.**    **Experience Of Plaintiff Aniirudh Ramesh**

110.    In or about March 2023, Plaintiff Aniirudh Ramesh signed up and paid for a Cricbuzz Plus account and downloaded the Cricbuzz App on his Android phone.  Plaintiff Ramesh most recently used the Cricbuzz App to watch pre-recorded videos in March 2024.

111.    Between March 2023 and March 2024, Plaintiff Ramesh used his Cricbuzz account on the Cricbuzz App to watch videos on his Android phone.

112.    By signing up for a Cricbuzz Plus (paid) account, Plaintiff Ramesh gained access to and watched exclusive pre-recorded video content on the Cricbuzz App that non-paying Cricbuzz users cannot access.

113.    At all relevant times, Plaintiff Ramesh never consented, agreed, nor otherwise permitted the App to disclose his PII to third parties.

114.    Likewise, Defendant never gave Plaintiff Ramesh the opportunity to prevent the Cricbuzz App from disclosing his PII to third parties.

115.    Nevertheless, each time Plaintiff Ramesh viewed a video on the Cricbuzz App, Defendant disclosed his PII to CleverTap via the CleverTap SDK (and encoded API).  Specifically, Defendant disclosed to CleverTap Plaintiff Ramesh's: (i) email address; (ii) Cricbuzz User ID; (iii) session ID; and (iv) video-viewing information in the form of the video ID and video name for each specific video watched by Plaintiff Ramesh.

116.   Using this information, Defendant was able to identify Plaintiff Ramesh and attribute his video viewing records to an individualized profile of Plaintiff Ramesh in its databases.  Indeed, even an ordinary person could identify Plaintiff Ramesh using the data Defendant disclosed to CleverTap.  CleverTap compiled Plaintiff Ramesh's PII and Plaintiff Ramesh's activity on the App, which Defendant uses for marketing, advertising, and analytics purposes.

## PARTIES

117.   Plaintiff Immanuel Johnson is, and has been at all relevant times, a resident of Virginia and has an intent to remain there.  Plaintiff Johnson is therefore a citizen of Virginia.

118.   Plaintiff Aniirudh Ramesh is, and has been at all relevant times, a resident of Tennessee and has an intent to remain there.  Plaintiff Ramesh is therefore a citizen of Tennessee.

119.   Defendant Times Internet Limited is a foreign corporation whose United States headquarters is located at 2500 Plaza 5, Harbourside Financial Center, Jersey City, New Jersey 07311.  Defendant Times Internet owns and operates the Cricbuzz App, which is used throughout the United States and globally.

## JURISDICTION AND VENUE

120.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

121.   This Court has general personal jurisdiction over Defendant Times Internet because Defendant's United States headquarters is in New Jersey.

122.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's United States headquarters is in this District and Defendant, as a foreign corporation, may be sued in any judicial district.

## CLASS ALLEGATIONS

123.   **Class Definition**: Plaintiffs seek to represent a class of similarly situated individuals defined as all persons in the United States who created Cricbuzz Plus accounts, used the Cricbuzz Android App or Cricbuzz iOS App to watch pre-recorded videos, and subsequently had their PII and video-viewing information transmitted to a third party without consent (the "Class").

124.   Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

125.   **Numerosity (Fed. R. Civ. P. 23(a)(1))**: At this time, Plaintiffs do not know the exact number of members of the aforementioned Class.  However, given the popularity of Defendant's App and the worldwide popularity of the sport of cricket in general, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

126.  **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3))**:  There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

(a)    whether Defendant collected PII from Plaintiffs and the Class members;

(b)    whether Defendant unlawfully disclosed and continues to disclose users' PII, including any video-viewing records, in violation of the VPPA;

(c)    whether Defendant's disclosures were committed knowingly; and

(d)    whether Defendant disclosed Plaintiffs' and the Class members' PII without consent.

127.  **Typicality (Fed. R. Civ. P. 23(a)(3))**:  Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Class, used their paid Cricbuzz Plus account on the Cricbuzz App to watch videos and consequently had their PII collected and disclosed by Defendant.

128.  **Adequacy (Fed. R. Civ. P. 23(a)(4))**:  Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA.  Plaintiffs and their counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiffs are able to fairly and adequately represent and protect the

interests of the Class.  Neither the Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Subclasses to address any steps that Defendant took.

129. **Superiority (Fed. R. Civ. P. 23(b)(3))**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the

Class.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation Of The VPPA
### 18 U.S.C. § 2710

130.   Plaintiffs Immanuel Johnson and Aniirudh Ramesh incorporate the foregoing allegations as if fully set forth herein.

131.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

132.   Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via its App.

133.   Plaintiffs and Class Members are "consumers" as defined by the VPPA because they created and paid for Cricbuzz Plus accounts, exchanging their e-mail addresses in the sign-up process, gained access to exclusive pre-recorded video content through Defendant's Cricbuzz Plus subscription, and subsequently watched pre-recorded videos through those accounts on the Cricbuzz mobile application— either the Android or iOS version.  18 U.S.C. § 2710(a)(1).  Under the VPPA, this

means that Plaintiffs and Class Members are "subscriber[s]" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

134.  That is, through their payment for and creation of a Cricbuzz Plus account on Defendant's App, the purpose of which is to provide pre-recorded video content to users, Plaintiffs and Class Members provided additional information that was used to track them without their consent and received benefits in exchange. Therefore, Plaintiffs and Class members are "subscribers" because they downloaded, registered for, committed to, and expressed association with the Cricbuzz App.

135.  Plaintiffs and Class Members viewed prerecorded video clips using either the Android or iOS versions of the App.  During these occasions, the App disclosed Plaintiffs' and Class Members' PII—including their e-mail addresses, User IDs, and records of the videos that they viewed—to third party analytics company CleverTap.

136.  The App's transmissions of Plaintiffs' and Class members' PII to CleverTap constitutes "knowing[] disclosures" of their "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

137.  Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C.

§ 2710(a)(3).   The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

138.   The information disclosed by the paid, premium version of the Cricbuzz App constitutes "personally identifiable information" in this context because it would allow an ordinary person—let alone CleverTap—to identify Plaintiffs and Class Members, as well as which specific videos they viewed.

139.   Plaintiffs and Class Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

140.   Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA.  In particular, the Cricbuzz App's disclosures to CleverTap were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership."  18 U.S.C. § 2710(a)(2).

141.   On behalf of themselves and the proposed Class, Plaintiffs seek: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Johnson and Ramesh seek a judgment against

Defendant, individually and on behalf of all others similarly situated, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the proposed Class, and naming Plaintiffs' counsel as class counsel to represent the Class;

(b)    For an order declaring that Defendant's conduct violates the VPPA referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)    For an award of statutory damages to the extent available;

(e)    For punitive damages, as warranted, in an amount to be determined at trial;

(f)    For prejudgment interest on all amounts awarded;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses, as well as costs of suit.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all

issues so triable.

Dated: March 28, 2024   Respectfully submitted,

        By: */s/ Yitzchak Kopel*
          Yitzchak Kopel

        **BURSOR & FISHER, P.A.**
        Yitzchak Kopel
        Max S. Roberts*
        Victoria X. Zhou*
        1330 Avenue of the America, 32nd Floor
        New York, NY 10019
        Telephone: (646) 837-7150
        Facsimile: (212) 989-9163
        E-Mail: ykopel@bursor.com
          mroberts@bursor.com
          vzhou@bursor.com

        *Pro Hac Vice Forthcoming*

        *Attorneys for Plaintiffs*